**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **MAX GERBOC,** | ) | **CASE NO. 1:16 CV 928** |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **CONTEXTLOGIC, INC.,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
|     **Defendant.** | ) | |

This matter is before the Court on the Motion to Dismiss filed by Defendant, ContextLogic, Inc. (Docket #9.) ContextLogic seeks to dismiss the Class Action Complaint filed by Plaintiff, Max Gerboc, pursuant to Fed. R. of Civ. P. 12(b)(6). For the following reasons, ContextLogic's Motion to Dismiss is granted in part and denied in part.

**I.      Factual and Procedural Background.**

Mr. Gerboc originally filed his Class Action Complaint against ContextLogic in the Lake County Court of Common Pleas on March 18, 2016. ContextLogic filed a Notice of Removal with this Court on April 19, 2016 pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d).

As set forth in the Complaint, ContextLogic created and operates a website, www.wish.com ("the Website"), where consumers can purchase thousands of types of products, ranging from home goods to apparel. (Complaint at Paragraph 7.) On January 15, 2016, Mr.

Gerboc purchased Portable Bluetooth Speakers ("the Speakers") from the Website for $27.00. (Complaint at Paragraph 17.) Mr. Gerboc alleges that in addition to listing the $27.00 purchase price, ContextLogic falsely represented that the Speakers were regularly priced $300, showing "$300," and represented a savings of 91% off the regular price, in an effort to induce customers to purchase products from its Website.[1] (Complaint at Paragraphs 18, 22 and 24.) Mr. Gerboc alleges ContextLogic's advertisement practices are unfair and deceptive, intentionally designed to mislead Mr. Gerboc and other consumers by including bogus reference prices in its website advertising, in violation of Ohio's Consumer Sales Practices Act, Ohio Rev. Code § 1345 et seq. ("Ohio CSPA"). In addition to his Ohio CSPA claim, Mr. Gerboc sets forth claims for breach of contract, fraud and unjust enrichment.

On June 10, 2016, ContextLogic filed its Motion to Dismiss. (Docket #9.) ContextLogic argues that the Complaint fails to identify any conduct that could be considered deceptive, unconscionable, fraudulent, or in breach of any agreement between ContextLogic and Mr. Gerboc or other Ohio consumers; that Mr. Gerboc has not alleged an injury cognizable under Ohio law; and, that the failure to allege actual damages defeats Mr. Gerboc's class action claim. Mr. Gerboc filed his Brief in Opposition on July 9, 2016. (Docket #14.) Mr. Gerboc argues that his claims against ContextLogic for violation of the Ohio CSPA, unjust enrichment and fraud, as well as his class action claim, are properly before the Court. Mr. Gerboc notes that he does not oppose dismissal of his breach of contract claim. ContextLogic filed a Reply Brief on July 25,

---

[1] Mr. Gerboc attaches a screen shot, taken from the Website, which lists the price of the Speakers as $28, and includes the amounts "$300" and "90%." However, Mr. Gerboc's "Order Confirmation" indicates Mr. Gerboc paid $27, which the Court will assume is why Mr. Gerboc alleges ContextLogic misrepresented he was receiving a 91% discount.

2016. (Docket #15.) Mr. Gerboc filed a Surreply Brief on July 29, 2016. (Docket #17.)

**II.    Standard of Review.**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favor of the plaintiff. *See Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitations of a cause of action's elements, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 129 S.Ct. 1937,1940 (2009). *See also Gregory v. Shelby County*, 220 F.3d 433, 446 (6th Cir. 2000) (court will not accept conclusions of law or unwarranted inferences cast in the form of factual allegations.)

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is,"[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland*, No. 06-3823, 2007 WL 2768285, at *2 (6th Cir. Sept. 25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable. *See Twombly*, 550 U.S. at 570.

On a motion brought under Rule 12(b)(6), the court's inquiry is limited to the content of

the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint may also be taken into account.  *See Bassett v. Nat'l Collegiate Athletic Ass'n,* 528 F.3d 426, 430 (6th Cir. 2008)*; Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

**III.   Discussion.**

    **A.   Ohio CSPA**

Ohio Rev. Code § 1345.02, entitled "Unfair or deceptive consumer sales practices prohibited," provides, in pertinent part, as follows:

> (A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction.  Such an unfair or deceptive act or practice violates this section whether it occurs before, during, or after the transaction.
>
> (B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:
>
>  (1) That the subject of a consumer transaction has sponsorship, approval, performance characteristics, accessories, uses, or benefits that it does not have;
>
>                                 * * *
>
>  (5)  That the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not, except that the act of a supplier in furnishing similar merchandise of equal or greater value as a good faith substitute does not violate this section;
>
>                                 * * *
>
>  (8)  That a specific price advantage exists, if it does not[.]
>
>                                 * * *
>
> (C)  In construing division (A) of this section, the court shall give due consideration and great weight to federal trade commission orders, trade regulation rules and guides, and the federal courts' interpretations of subsection 45(a)(1) of the "Federal Trade Commission Act," 38 Stat. 717 (1914), 15 U.S.C.A. 41, as amended.

(Ohio Rev. Code § 1345.02.)

As set forth in Section 1345.02(C), in construing claims brought pursuant to Section 1345(A), the Court must give "due consideration and great weight to orders, trade regulation rules and guides promulgated by the FTC." The "FTC Guides Against Deceptive Pricing," 16 C.F.R. § 233.1, provides as follows:

> (a)  Former price comparisons.
>
> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article.  If the former price is the actual bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison.  Where the former price is genuine, the bargain being advertised is a true one.  If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects.  In such a case, the "reduced" price is, in reality, probably just the seller's regular price.

(16 C.F.R. § 233.1(a).)  In addition, 16 C.F.R. § 233.2, entitled "Retail price comparisons; comparable value comparisons," identifies "[a]nother commonly used form of bargain advertising" as one where the seller offers "goods at prices lower than those being charged by others for the same merchandise in the advertiser's trade area (the area in which he does business)." 16 C.F.R. § 233.2(a).  The FTC Guides provide:

> This may be done either on a temporary or a permanent basis, but in either case the advertised higher price must be based upon fact, and not be fictitious or misleading. Whenever an advertiser represents that he is selling below the prices being charged in his area for a particular article, he should be reasonably certain that the higher price he advertises does not appreciably exceed the price at which substantial sales of the article are being made in the area—that is, a sufficient number of sales so that a consumer would consider a reduction from the price to represent a genuine bargain or saving.

(16 C.F.R. § 233.2(a).)

-5-

Similarly, Ohio Administrative Code 109:4-3-12, entitled "Price comparisons," provides in pertinent part as follows:

(A) Declaration of policy

This Rule is designed to define with reasonable specificity certain circumstances in which a supplier's acts or practices in advertising price comparisons are deceptive and therefore illegal. For purposes of this rule, price comparisons involve a comparison of the present or future price of the subject of a consumer transaction to a reference price, usually as an incentive for consumers to purchase. This rule deals only with out-of-store advertisements as defined in paragraph (B)(3) of this rule. The rule stems from the general principle, codified in division (B) of section 1345.02 of the Revised Code, that it is deceptive for any claimed savings, discount, bargain, or sale not to be genuine, for the prices which are the basis of such comparisons not to be bona fide, genuine prices, and for out-of-store advertisements which indicate price comparisons to create false expectations in the minds of consumers.

(B) Definitions

* * *

(3) "Out-of-store advertising" means any advertisement, message, or representation made by a supplier outside of its interior premises. It includes but is not limited to communications made via newspapers, television, radio, printed brochures, leaflets, fliers, billboards or signs painted on or posted in windows.

(4) "Price comparison" or "comparison" means any representation, however expressed, that a savings, reduction or discount exists or will exist; provided, however, that language which does not reasonably imply a comparison to identifiable prices or items does not express a price comparison.

(5) "Reference price" means a higher price to which a supplier compares another, lower price for the purpose of indicating that a reduction in price exists or will exist.

(6) "Regular price" has the same meaning as in rule 109:4-3-04 of the Administrative Code.[2]

---

[2]Ohio Administrative Code 109:4-3-04 defines "regular price" as follows:

(1) "Regular price" means the price at which the goods or services are openly and actively sold by a supplier to the public on a continuing basis for a substantial period of time. A price is not a regular price if:

-6-

\* \* \*

(E) Comparison with supplier's own price

(1) It is deceptive for a supplier in its out-of-store advertising to make any price comparison by the use of such terms as "regularly..........., now..........," "..........per cent off," "reduced from ......... to ..........," "save $.......," unless:

(a) The comparison is to the supplier's regular price; or

(b) If the reference price is the regular price of a previous season, the season and year are clearly and conspicuously disclosed; or

(c) There is language in the advertisement which clearly and conspicuously discloses that the comparison is to another price and which discloses the nature of the reference price.

(F) Comparison with prices which are not the supplier's own

(1) It is deceptive for a supplier in its out-of-store advertising to use as a reference price in making a price comparison any "list," "catalogue," "manufacturer's suggested," "competitor's" or any other price which is not its own unless:

(a) Such a reference price is genuine, and

(b) The advertisement clearly and conspicuously indicates that the reference price is not the supplier's own price.

(Ohio Administrative Code 109:4-3-12.)

Ohio Rev. Code § 1345.09, entitled "Private remedies," provides as follows with regard to the relief available to consumers for violations of Section 1345.02:

(A) Where the violation was an act prohibited by section 1345.02, 1345.03, or 1345.031 of the Revised Code, the consumer may, in an individual action, rescind the transaction or recover the consumer's actual economic damages plus an

---

(a) It is not the supplier's actual selling price;

(b) It is a price which has not been used in the recent past; or

(c) It is a price which has been used only for a short period of time.

-7-

>amount not exceeding five thousand dollars in noneconomic damages.
>
>(B) Where the violation was an act or practice declared to be deceptive or unconscionable by rule adopted under division (B)(2) of section 1345.05 of the Revised Code before the consumer transaction on which the action is based, or an act or practice determined by a court of this state to violate section 1345.02, 1345.03, or 1345.031 of the Revised Code and committed after the decision containing the determination has been made available for public inspection under division (A)(3) of section 1345.05 of the Revised Code, the consumer may rescind the transaction or recover, but not in a class action, three times the amount of the consumer's actual economic damages or two hundred dollars, whichever is greater, plus an amount not exceeding five thousand dollars in noneconomic damages or recover damages or other appropriate relief in a class action under Civil Rule 23, as amended.

(Ohio Rev. Code §§ 1345.09(A) and 1345.09(B).)

### 1. Ohio Rev. Code § 1345.02(B)(8).

Mr. Gerboc claims that ContextLogic deceptively represented that a specific price advantage existed, when it did not, as prohibited under Ohio Rev. Code § 1345.02(B)(8). The factual allegations set forth in the Complaint, when considered in a light most favorable to Mr. Gerboc, are sufficient to raise his right to relief under Section 1345.02(B)(8) above mere speculation. The Ohio CSPA and accompanying administrative provisions prohibit deceptive price comparisons by suppliers. There is no express language in the Ohio CSPA limiting the prohibition on false and deceptive pricing practices to "brick-and-mortar" retailers, as suggested by ContextLogic. Accordingly, Mr. Gerboc states a valid claim under Ohio Rev. Code § 1345.02(B)(8).

### 2. Ohio Rev. Code §§ 1345.02(B)(1) and 1345.02(B)(5).

Mr. Gerboc also alleges violations of Sections 1345.02(B)(1) and 1345.02(B)(5). Mr. Gerboc has not provided any facts to support a claim under either of these Sections. Section 1345.02(B)(1) prohibits a supplier from misrepresenting a product's "benefits." "'Benefit' in §

1345.02(B)(1) does not refer to price." *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1057 (N.D. Ohio July 2, 2014.)   Section 1345.02(B)(5), prohibits a supplier from representing "that the subject of a consumer transaction has been supplied in accordance with a previous representation, if it has not," but includes an exception for instances when a supplier furnishes "similar merchandise of equal or greater value as a good faith substitute."  Section 1345.02(B)(5) does not reference unlawful price comparisons, but instead focuses on the quality and characteristics of the goods supplied.  There is no allegation that ContextLogic misrepresented the Speakers' benefits or failed to supply the Speakers as ordered.  Accordingly, to the extent Mr. Gerboc raises claims under Sections 1345.02(B)(1) and 1345.02(B)(5), said claims are dismissed.          **B.       Breach of Contract.**

In his Opposition Brief, Mr. Gerboc indicates he does not oppose dismissal of his breach of contract claim.  (Docket #14 at p. 13, Footnote 2.)  Accordingly, Mr. Gerboc's Second Claim for Relief for Breach of Contract will be dismissed.

**C.       Unjust Enrichment**.

When "a party retains money or a benefit that in equity or justice belongs to another," he will be liable for unjust enrichment.  *Eyerman v. Mary Kay Cosmetics, Inc.*, 967 F.2d 213, 222 (6th Cir. Ohio 1992) (citing *Hummel v. Hummel*, 133 Ohio St. 520, 14 N.E.2d 923, 926-27 (1938)).  Mr. Gerboc alleges that ContextLogic was unjustly enriched in the amount of $24.57 – alleging that the Speakers he purchased for $27.00 were never actually priced at $300 as represented on the Website and, therefore, that because the Website indicated that he was receiving a 91% discount, he is entitled to a refund equal to 91% of the $27.00 purchase price.  To prevail on a claim for unjust enrichment, a plaintiff must prove by a preponderance of the evidence that (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant had knowledge of the benefit; and, (3) that the defendant retained the benefit under circumstances in

which it would be unjust for him to do so without payment. *Johnson v. Microsoft Corp.,* 106 Ohio St. 3d 278, 285, 834 N.E.2d 791, 799 (2005)(citing *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984)).   The purpose of unjust enrichment claims "is not to compensate the plaintiff for any loss or damage suffered by him but to compensate him for the benefit he has conferred on the defendant." *Johnson*, 106 Ohio St. 3d at 286 (citing *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393, 397 (1954)).

> The allegations supporting Mr. Gerboc's claim that ContextLogic violated the Ohio CSPA's prohibition against fictitious price comparisons are not sufficient to support his claim for unjust enrichment.  *See Martin v. Lamrite West, Inc.*, 2015 Ohio 3585, ¶16, 41 N.E.3d 850, 855 (Ohio Ct. App., Cuyahoga County 2015).  Mr. Gerboc paid $27.00 – the listed purchase price – and received the Speakers.  Mr. Gerboc includes no allegations that the Speakers were worth less than $27.00, that the Speakers were worth only $2.43 (a 91% discount off of the $27.00 Mr. Gerboc paid for the Speakers), that the Speakers could have been purchased elsewhere for less, that ContextLogic promised and failed to apply a 91% discount to the $27.00 purchase price, or that ContextLogic failed to fulfill his order – only that the price comparison appearing on the Website, which made it appear as though he was getting a great deal, was fictitious.  Mr. Gerboc received the benefit of what he paid for and, under the facts as alleged in the Complaint, cannot recover on the basis that it would be unjust to allow ContextLogic to retain the purchase price.  *Id.* (citing *Hughes v. Oberholtzer*, 162 Ohio St. 330, 335, 123 N.E.2d 393 (1954); see also *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 56 (D. Mass. 2015)).  Accordingly, Mr. Gerboc fails to state a valid claim for unjust enrichment.

**D. Fraud**.

Mr. Gerboc alleges ContextLogic knowingly made false, material misrepresentations regarding the discounts applied to the products sold on the Website, with the intent of inducing customers to make purchases. Under Ohio law, a claim for fraud requires: (1) a representation or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction at hand, (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (4) with the intent of misleading another into relying upon it, (5) justifiable reliance upon the representation or concealment, and (6) a resulting injury proximately caused by the reliance. *Terlesky v. Fifth Dimension, Inc.*, Case No. 15 CV 374, 2015 U.S. Dist. LEXIS 155236, at *16-17 (S.D. Ohio Nov. 17, 2015)(citing *Delahunt v. Cytodyne Techs.*, 241 F. Supp. 2d 827, 834 (S.D. Ohio 2003)).

Mr. Gerboc asserts that the false price comparison induced him to purchase the Speakers and that he should be reimbursed $24.57 of the $27.00 he paid for the Speakers, 91% of the purchase price, because he allegedly relied upon ContextLogic's misrepresentation that the Speaker he was purchasing was originally $300 and discounted 91%. However, Mr. Gerboc has not alleged any actual damages and the failure to allege "an injury above and beyond the reliance on the misrepresentation itself is fatal" to his fraud claim. *Delahunt*, 241 F. Supp. 2d at 834. Accordingly, Mr. Gerboc fails to state a valid claim for fraud.

**E. Class Action Claim**.

As set forth above, Mr. Gerboc fails to state valid claims for unjust enrichment and fraud and he has voluntarily abandoned his breach of contract claim, leaving only his claim that ContextLogic violated the Ohio CSPA. Although Mr. Gerboc has sufficiently alleged an

individual claim under the Ohio CSPA, his claim cannot proceed as a class action.  "Under Ohio law, actual injury is independent of an OCSPA violation and both must be adequately alleged in a class action under O.R.C. § 1345.09(B)." *Johnson v. Jos. A. Bank Clothiers, Inc.*, Case No. 2:13 CV 756, 2014 U.S. Dist. LEXIS 2040, *25-26 (S.D. Ohio Jan. 8, 2014)(citing Ohio Rev. Code § 1345.09(B); *Searles v. Germain Ford of Columbus, L.L.C.*, 2009 Ohio 1323, ¶¶ 21-23, 2009 Ohio App. LEXIS 1112, 13-14 (Ohio Ct. App., Franklin County 2009)).  "In order to maintain a class action . . . a plaintiff must allege actual 'damages [that] were a proximate result of the defendant's deceptive act.'"*Johnson*, 2014 U.S. Dist. LEXIS 2040, *20 (quoting *Butler v. Sterline, Inc.*, 210 F.3d 3371, *4 (6th Cir. Ohio 2010).  "Courts define actual damages under the OCSPA as 'damages for direct, incidental, or consequential pecuniary losses resulting from a violation of Chapter 1345 of the Revised Code and does not include damages for noneconomic loss as defined in Section 2315.18 of the Revised Code.'" *Ice v. Hobby Lobby Stores, Inc.*, Case No. 14 CV 744, 2015 U.S. Dist. LEXIS 131336, *8 (N.D. Ohio Sept. 29, 2015).

Mr. Gerboc alleges that he, and the putative class members, are entitled to recover a partial refund of their purchase price in the amount of the fictitious "percentage off" displayed on the Website for the item purchased.  In Mr. Gerboc's case, ContextLogic sold him the Speakers for $27.00.  The Website displayed a $300 price with a slash through it, as well as "91%."  Mr. Gerboc calculates that he should be refunded $24.57 of the $27.00 purchase price – not because ContextLogic promised a 91% discount off of $27.00 and not because the Speakers are only worth $2.43 – but because ContextLogic unlawfully made a fictitious price comparison to induce his purchase.  As set forth above, Mr. Gerboc alleges no actual damages and, in the absence of actual damages, a consumer cannot maintain a class action under the Ohio CSPA.  Accordingly,

-12-

ContextLogic is entitled to dismissal of Mr. Gerboc's Ohio CSPA class action claim.

**IV.     Conclusion**.

Based on the foregoing, the Motion to Dismiss filed by ContextLogic (Docket #9) is hereby GRANTED IN PART and DENIED IN PART.

ContextLogic's Motion to Dismiss is hereby GRANTED as to Mr. Gerboc's Second, Third and Fourth Claims for Relief and as to Mr. Gerboc's Class Action Claim.

ContextLogic's Motion to Dismiss is hereby GRANTED to the extent Mr. Gerboc raises individual claims under Ohio Rev. Code §§ 1345.02(B)(1) and 1345(B)(5).

ContextLogic's Motion to Dismiss is hereby DENIED as to Mr. Gerboc's individual claim for violation of Ohio Rev. Code § 1345.02(B)(8).

A status conference remains set for November 14, 2016 at 10:00 a.m.

IT IS SO ORDERED.

 s/Donald C. Nugent  
Donald C. Nugent  
United States District Judge

DATED: November 4, 2016